UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In Re:

Steven Michael Pierce,
Kathy Lynn Pierce,

        Debtors.

Case No.  19-45664-mbm
Chapter 7
Hon. Marci B. McIvor

_____/

WELTMAN, WEINBERG & REIS CO., L.P.A
By: Geoffrey J. Peters (OH 0063502)
Attorneys for BMO Harris Bank, N.A.
3705 Marlane Drive
Grove City, OH 43123
614-883-0678
gpeters@weltman.com

Yuliy Osipov
Attorney for Debtors
20700 Civic Center Dr, Ste 420
Southfield, MI 48076-4140
248-663-1800

_____/

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND TO WAIVE FOURTEEN-DAY STAY PURSUANT TO RULE 4001(A)(3)

BMO Harris Bank, N.A., by and through its attorneys, Weltman, Weinberg & Reis Co. L.P.A., for its Motion for Relief from Automatic Stay, states:

1.      This action is commenced pursuant to 11 U.S.C. § 361, 362, 363 and other Sections of Title 11 of the Bankruptcy Code.

2.      Debtors, Steven Michael Pierce and Kathy Lynn Pierce filed petition under 11 U.S.C., Chapter 7, on April 14, 2019.

3.      Pursuant to the provisions of 11 U.S.C. § 362(a), the filing of the Debtors' petition operates as an automatic stay against BMO Harris Bank, N.A.'s rights as a secured creditor to proceed against Debtors' property.   A copy of the Creditor's proposed Order is attached as **(Exhibit A)**.

4.     On October 23, 2003, Steven M. Pierce executed and delivered a certain Note to M&I Bank FSB ("Note") in the amount of $162,000.00 (A copy of the Note is attached hereto as **Exhibit B**).

5.     To secure payment of the Note, Steven M. Pierce and Kathy L. Pierce ("Debtors") executed and delivered a certain Mortgage ("Mortgage") dated October 23, 2003, granting a security interest in the property located at 6016 Carleton Rockwood Rd, South Rockwood, MI 48179 ("Property").

6.     The Mortgage was perfected by filing the mortgage with the Monroe County Register of Deeds in Liber 2616, Page 525 (A copy of the Mortgage is attached hereto as **Exhibit C**).

7.     M&I Bank was acquired by BMO Harris Bank, N.A. ("Creditor"). (A copy of the merger documents are attached hereto as **Exhibit D**).

8.     There remains due and owing on the Note and Mortgage the sum of $149,671.42, which consists of principal $128,671.51 and interest $20,999.91, as of May 13, 2019.

9.     Debtor's Note obligation with Creditor has matured on October 27, 2018 and the entire balance of $149,671.42 is now due in full.

10.     Creditor believes that the property has a value of $146,523.00 according to Debtors' Schedule D; that Debtors may have equity in the property that is the subject of its Note and Mortgage; and, that said property may be of inconsequential value to the estate.

11.     Continuation of the automatic stay will work real and irreparable harm to Creditor and will deprive it of the adequate protection to which it is entitled for the following reasons, among others.

- Debtors may be without funds necessary to preserve and maintain the property in good condition. The condition of the property is decreasing.
- Interest continues to accrue on Creditor's claim against Debtors and Debtors' Note obligation with Creditor has matured on October 27, 2018.

12.     Pursuant to Debtors' Statement of Intent, Debtors intend to surrender the property to Creditor.

13.     Creditor's counsel's office contacted Debtors' counsel's office on May 16, 2019, to seek concurrence in its request for relief. To date, Creditor has neither received concurrence to its motion nor received a response from Debtor's counsel's office.

14.    Creditor is entitled to relief from stay to recover possession of the property and pursue its state law remedies with respect to the property.

15.    Creditor specifically requests that the fourteen-day stay pursuant to Rule 4001(a)(3) prior to enforcement of the order requested herein be waived; such grace period is designed solely for appeal purposes, and an appeal in this matter would be frivolous and without merit.

16.    Other liens encumbering the real property are: Monroe County Treasurer in excess of $2,629.64.

WHEREFORE, Creditor respectfully requests that this honorable Court enter its Order granting its Motion for Relief from the Automatic Stay so as to permit BMO Harris Bank, N.A. to proceed to enforce its security interest in the property.

> Respectfully submitted,
> **WELTMAN, WEINBERG & REIS CO., L.P.A.**

Dated: May 20, 2019

> By:    /S/ Geoffrey J. Peters
> Geoffrey J. Peters (OH 0063502)
> Attorneys for Creditor
> BMO Harris Bank, N.A.
> 3705 Marlane Drive
> Grove City, OH 43123
> 614-883-0678
> gpeters@weltman.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In Re:

Steven Michael Pierce,
Kathy Lynn Pierce,

      Debtors.

Case No.  19-45664-mbm
Chapter 7
Hon. Marci B. McIvor

_____/

WELTMAN, WEINBERG & REIS CO., L.P.A
By: Geoffrey J. Peters (OH 0063502)
Attorneys for BMO Harris Bank, N.A.
3705 Marlane Drive
Grove City, OH 43123
614-883-0678
gpeters@weltman.com

Yuliy Osipov
Attorney for Debtors
20700 Civic Center Dr, Ste 420
Southfield, MI 48076-4140
248-663-1800

_____/

## ORDER GRANTING MOTION FOR RELIEF
## FROM THE AUTOMATIC STAY AND WAIVING THE
## FOURTEEN-DAY STAY PURSUANT TO RULE 4001(a)(3)

      This matter having come before the Court upon the Motion of BMO Harris Bank, N.A.,
in the above entitled matter; and, the Court finding that L.B.R. 9014-1(B)(2) provides for entry
of an Order if a response has not been filed within 14 days after service of the Motion on the
parties; and

      the Court finding that no response has been filed within 14 days, and the Court having
noted that Creditor BMO Harris Bank, N.A. has complied with applicable provisions of L.B.R.
9014-1 and L.B.R. 4001.1, and

      the Court having determined that continuation of the automatic stay against Creditor
BMO Harris Bank, N.A. would deny it the adequate protection afforded to it on its security
interest pursuant to 11 U.S.C. § 361(3);

**EXHIBIT "A"**

**IT IS ORDERED** that the Motion for Relief from the Automatic Stay as to BMO Harris Bank, N.A. is granted.

**IT IS FURTHER ORDERED** that the Automatic Stay as to BMO Harris Bank, N.A.'s interest in property located at 6016 Carleton Rockwood Rd, South Rockwood, MI 48179 is lifted and BMO Harris Bank, N.A. (040051193) is permitted to pursue its state law remedies with respect to its interest in the subject property. Any surplus remaining after the sale of the property shall be turned over to the Trustee.

**IT IS FURTHER ORDERED** that the fourteen-day stay imposed by Rule 4001(a)(3) is hereby waived.

**IT IS FURTHER ORDERED** that this Order shall remain valid notwithstanding conversion of this case to any other chapter under the Bankruptcy Code.

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction over all matters relating to enforcement of this order.

# NOTE

October 23, 2003          SOUTH ROCKWOOD          MICHIGAN
                              [City]                [State]

6318 CARLETON ROCKWOOD RD
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 152,000.00 (this amount is called 'principal') plus interest, to the order of the Lender. The Lender is M&I BANK FSB . I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 7.400 %. This interest rate is the rate I will pay before and after any default described in Section 6(B) of this Note.

After the maturity of this Note (whether by acceleration or lapse of time), I will pay interest on unpaid principal and interest at a yearly rate of 7.400 %.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest every month beginning on November 27, 2003 and continuing on the same day of each month thereafter until October 27, 2018 , which is called the "maturity date." If, on the maturity date, I still owe amounts under this Note, I will pay those amounts in full on that date regardless of the amounts. The Note Holder has no obligation to refinance the payment due on the maturity date. My payments will be applied in such order as Lender elects to charges and amounts due under this Note.

I will make my monthly payment at P.O. BOX 343

MILWAUKEE, WI 53201-0341 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S.$ 1,123.21 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they become due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so. The Note Holder will use partial prepayments to reduce the amount of principal that I owe. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

[ X ] If I prepay this Note during the first 12, 24 or 36 months, I agree to pay a prepayment fee of 3%, 2% or 1%, respectively, of the initial principal amount of this Note unless the prepayment is made in connection with a sale of the property securing this Note or is prohibited by law.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments and Return Check Charge

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5 % of the unpaid amount [ X ] or $ 25.00 whichever is greater. I will pay this late charge promptly but only once on each late payment. I agree to pay a charge of $ 15.00 for each check presented for payment under this Note which is returned unsatisfied.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

EXHIBIT "B"

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Unless a lien would be prohibited by law or would render a nontaxable account taxable, I grant to Lender a security interest and lien in any deposit account I may at any time have with Lender.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. INTERPRETATION

Lender is a federal savings bank with its charter located in the state of Nevada. The validity, construction and enforcement of this Note are governed by applicable federal law and Nevada law. Conduct, action or proceedings to recover any collateral or foreclose on any property may be governed by the state in which the collateral or property is located.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
STEVEN M PIERCE                                    -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

(Sign Original Only)

RCPT# 40991 STN

$32.00 M HTGE

STATE OF MICHIGAN
MONROE COUNTY
RECEIVED FOR RECORD
31 OCT 2003 3:45:00 PM
OFFICIAL SEAL
GERI ALLEN
REGISTER OF DEEDS

LIBER 2616    PAGE 525

# MORTGAGE

☐ If checked here, this Security Instrument is a construction mortgage.
THIS IS A FUTURE ADVANCE MORTGAGE ☒ AND (if checked here) THE MAXIMUM PRINCIPAL AMOUNT, EXCLUDING PROTECTIVE ADVANCES, THAT MAY BE SECURED BY THIS MORTGAGE IS $162,000.00

THIS MORTGAGE ("Security Instrument") is given on   October 23, 2003
The mortgagor is   STEVEN M PIERCE AND KATHY L PIERCE , husband and wife

whose address is

6016 CARLETON ROCKWOOD RD SOUTH ROCKWOOD MI 48179-
("Borrower"). This Security Instrument is given to    M&I BANK FSB

which is organized and existing under the laws of  THE UNITED STATES
and whose address is   3993 HOWARD HUGHES PARKWAY STE 100
LAS VEGAS, NV 89109                                      ("Lender"). Borrower owes Lender the
principal sum of
**ONE HUNDRED SIXTY TWO THOUSAND DOLLARS AND ZERO CENTS**

Dollars (U.S.$162,000.00        ). This debt is evidenced by the Borrower's note/agreement dated the same date as this Security Instrument ("Note"), which provides for periodic payments, with the full debt, if not paid earlier, due and payable on  THE SCHEDULE THEREIN       . This Security Instrument secures to Lender: (a) the sum stated in the first paragraph of this Security Instrument, plus interest and charges according to the terms of the Note, and  any extensions, renewals or modifications signed by any Borrower of such Note, (b) any additional sums which are in the future loaned by Lender to any Borrower, to any Borrower  and another or to another guaranteed or endorsed by any Borrower primarily for personal, family or household purposes agreed in documents evidencing the transaction to be secured by this Security Instrument, (c) all other additional sums which are in the future loaned by Lender to any Borrower, to any Borrower and another or to another guaranteed or endorsed by any Borrower, (d) all interest and charges, (e) to the extent not prohibited by law, all costs and expenses of collection or enforcement of this Security Instrument, and (f) the performance of all covenants, conditions and agreements contained in this Security Instrument. For this purpose, Borrower does hereby mortgage.

Page 1 of 7

Return to
Northern United Title Services
3450 W. Central Ave Suite 132
Toledo, Ohio 43606



warrant, grant and convey to Lender, with power of sale. the following described property located in

County, Michigan: MONROE
COMMENCING 133.72 FEET SOUTH 35 DEGREES 15
MINUTES EAST FROM THE INTERSECTION OF THE
CENTER LINE OF CARLETON-ROCKWOOD ROAD AND THE
WEST LINE OF SECTION 16, TOWN 5 SOUTH, RANGE
19 EAST, PROCEEDING THENCE SOUTH 8 DEGREES
15 MINUTES EAST 84.00 FEET, THENCE DUE SOUTH
183.00 FEET, THENCE NORTH 88 DEGREES 15
MINUTES EAST WEST 94.00 FEET; THENCE DUE
NORTH 183.00 FEET TO THE POINT OF BEGINNING;
BEING A PART OF THE WEST HALF OF SECTION 16,
TOWN 5 SOUTH, RANGE 10 EAST

which has the address of 6016 CARLETON ROCKWOOD RD  SOUTH ROCKWOOD      [Street, City],
Michigan  48179–      [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances. and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property subject only to restrictions and easements of record. municipal and zoning ordinances. current taxes and assessments not yet due, and
NONE

Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any such matters.

Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day periodic payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums. if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may. at any time. collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time; 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may. at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge. an annual accounting of the Funds. showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due. Lender may so notify Borrower in writing, and. in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 22. Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed the payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument; or (d) the lien is identified under Borrower Covenants on the second page of this Security Instrument relating to condition of title. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the periodic payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 22 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender

with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the periodic payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand

made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, warrant, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by applicable federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects periodic payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**21. Venue.** To the extent not prohibited by law, Borrower consents that venue for any legal proceeding relating to enforcement of this Security Instrument shall be, at Lender's option, the county in which any Borrower resides or the county in which this Security Instrument was executed or the county in which the Lender has its principal office in the state in which any Borrower resides or the state in which this Security Instrument was executed.

Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in paragraph 14. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.

**24. Protective Advances.** In this Security Instrument, "protective advance" means an indebtedness or obligation that is secured by this Security Instrument and that arises because Lender makes an expenditure or expenditures (i) to fulfill or perform an obligation of Borrower under this Security Instrument, with respect to the Property, that Borrower has failed to fulfill or perform, (ii) to preserve the priority of this Security Instrument or the value of the Property, or (iii) for attorneys' fees or other expenses that are incurred in exercising a right or remedy under this Security Instrument or that Borrower has agreed in this Security Instrument to reimburse to Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument.

Witnesses:

_____    _____ (Seal)
                                    STEVEN M PIERCE          -Borrower

_____    _____ (Seal)
                                    KATHY L PIERCE           -Borrower

_____ (Seal)              _____ (Seal)
                -Borrower                                    -Borrower


**STATE OF MICHIGAN,**         Monroe          **County SS:**

The foregoing instrument was acknowledged before me this   October 23.rd   , 2003
                                                              (date)

by   STEVEN M PIERCE AND
     KATHY L PIERCE    husband & wife

(person acknowledged)

My Commission Expires:  January 7, 2006         _____
                                                Notary Public

                                                          County, Michigan


This instrument was prepared by   CAROL PETERSON

Tammy L. Kaupper
Notary Public Kent Co., MI
My Commission Expires January 7, 2006
Acting in Oakland County, MI
Monroe

M&I BANK FSB
ATTN: DOCUMENT REVIEW
PO BOX 5920
MADISON, WI 53705-0920
AFTER RECORDING RETURN TO LENDER AT ITS ADDRESS DESCRIBED ABOVE.

Page 7 of 7



770 North Water Street
Milwaukee, WI 53202-3509
414 765-7700
mibank.com

## BMO HARRIS BANK NATIONAL ASSOCIATION

Secretar 's Certification of Consummation of Mer er Transactions and Chan e of Title

I, Gina M. McBride, Assistant Secretary of BMO Harris Bank National Association (formerly named Harris National Association), a national banking association organized and existing under the laws of the United States ("BMO Harris ank"), hereby certify that:

(a)     Effective on July 5, 2011, The Harris Bank National Association, a national banking association organized and existing under the laws of the United States ("THBNA"), merged with and into BMO Harris Bank with BMO Harris Bank as the surviving institution pursuant to an Agreement and Plan of Merger between THBNA and BMO Harris Bank;

(b)     Effective on July 5, 2011, M&I Marshall & Ilsley Bank, a Wisconsin chartered state b      ("M&I Bank"), merged with and into BMO Harris Bank with BMO Harris Bank as the surviving institution pursuant to an Agreement and Plan of Merger between M&I Bank and BMO Harris Bank;

(c)     Effective on July 5, 2011, M&I Bank National Association, a national banking association resulting from the conversion on July 5, 2011 of M&I Bank FSB (a federal savings bank) into a national banking association ("M&INA") pursuant to the laws of the United States, merged with and into BMO Harris Bank with BMO Harris Bank as the surviving institution pursuant to an Agreement and Plan of Merger between M&INA and BMO Harris Bank;

(d)     The merger transactions referred to in (a), (b) and (c) above were duly authorized and approved by the applicable board of directors and sole shareholder of each of BMO Harris Bank, THBNA, M&I Bank and M&INA; and

(e)     Effective on July 5, 2011 following the mergers referred to in (a), (b) and (c) above, BMO Harris Bank adopted a Third Amended and Restated Articles of Association pursuant to which its corporate title was changed from "Harris National Association" to "BMO Harris Bank National Association".

*[Signature Page Follows]*

BMO  | A part of BMO Financial Group                    M&I is a branch of and a trade name used by BMO Harris Bank N.A.



IN WITNESS WHEREOF, I have hereunto signed my name.

Dated:  July 7, 2011

Name:  Gin  M.  McBride
Title:    Assistant Secretary

## Federal Deposit Insurance Corporation

Each depositor insured to at least $250,000 per insured bank

# M & I Bank FSB (FDIC #: 28923)

## Status: Inactive • Inactive as of July 5, 2011

## M & I Bank FSB was merged or acquired without government assistance

Data as of: October 22, 2014

| Overview | Locations | History | Identifications | Financials |

**N/A**
Bank Holding Company

M & I Bank FSB
Banking Institution

**N/A**
Branches (Offices)

**Inactive as of July 5, 2011**

**M & I Bank FSB** is no longer doing business under that name because it has been merged or acquired without government assistance. See the successor institution BMO Harris Bank National Association (FDIC #: 16571)

| | |
|---|---|
| **Established:** | January 1, 1902 |
| **FDIC Certificate #:** | 28923 |
| **Insured:** | January 12, 1944 |
| **Bank Charter Class:** | National Bank |
| **Headquarters:** | 3993 Howard Hughes Parkway, Suite 100 Las Vegas, NV 89109 Clark County |

Contact the FDIC about M & I Bank FSB or BMO Harris Bank National Association

# United States Bankruptcy Court

## Eastern District of Michigan

| | | | |
|---|---|---|---|
| In Re | Steven Michael Pierce and Kathy Lynn Pierce | ) | Case No. 19-45664-mbm |
| | | ) | |
| | | ) | Chapter 7 |
| | | ) | |
| | | ) | |
| | Debtor, | ) | |
| | | ) | |
| | | ) | |
| Address | 6016 Carleton Rockwood Rd, South Rockwood, MI 48179-9769 | ) | |
| | | ) | |
| | | ) | |
| Last four digits of Social Security or Individual Tax-payer Identification (TIN) No(s). (if any) xxx-xx-4369 and xxx-xx-2619 Employers Tax Identification (EIN) No(s). (if any) | ) | | |

## NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY TO THE DEBTOR/RESPONDENT:

<u>BMO Harris Bank, N.A.</u> has filed papers with the court to request relief from the automatic stay.

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one).

If you do not want the court to Lift the Automatic Stay as to Creditor, BMO Harris Bank, N.A., or if you want the court to consider your views on the Motion for Relief from Automatic Stay, within 14 days from the date of service, you or your attorney must:

File with the court a written response or an answer, explaining your position at:

United States Bankruptcy Court
Clerk's Office
211 W. Fort Street, 21st Floor
Detroit, MI 48226

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

You must also mail a copy to:

Geoffrey J. Peters, Esq.
Weltman, Weinberg & Reis, Co., L.P.A.
Attorney for Creditor
3705 Marlane Drive
Grove City, OH 43123

Douglas Ellmann
Chapter 7 Trustee
308 W. Huron St.
Ann Arbor, MI 48103-4204

If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.

Respectfully submitted,
**WELTMAN, WEINBERG & REIS CO., L.P.A.**

Dated: May 20, 2019

By: /S/ Geoffrey J. Peters
Geoffrey J. Peters (OH 0063502)
Attorneys for BMO Harris Bank, N.A.
3705 Marlane Drive
Grove City, OH 43123
614-883-0678
gpeters@weltman.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In Re:

Steven Michael Pierce,
Kathy Lynn Pierce,

        Debtors.

Case No.  19-45664-mbm
Chapter 7
Hon. Marci B. McIvor

_____/

WELTMAN, WEINBERG & REIS CO., L.P.A
By: Geoffrey J. Peters (OH 0063502)
Attorneys for BMO Harris Bank, N.A.
3705 Marlane Drive
Grove City, OH 43123
614-883-0678
gpeters@weltman.com

Yuliy Osipov
Attorney for Debtors
20700 Civic Center Dr, Ste 420
Southfield, MI 48076-4140
248-663-1800

_____/

## **CERTIFICATE OF SERVICE**

I hereby do certify that a true and correct copy of the Creditor's Motion for Relief from the Automatic Stay, Exhibits, and Notice of Motion were sent to the following:

Douglas Ellmann, Chapter 7 Trustee

Yuliy Osipov, Attorney for Debtors

on the ___17th___ day of June 2019 by ECF/CM electronic notification.

Steven Michael Pierce
Kathy Lynn Pierce
Debtors,
6016 Carleton Rockwood Rd
South Rockwood, MI 48179-9769

United States Trustee's Office
211 West Fort Street, Suite 700
Detroit, MI 48226

Monroe County Treasurer
51 South Macomb St.
Monroe, MI 48161

on the ___17th___ day of June 2019 by U.S. First Class Mail.


Respectfully submitted,
**WELTMAN, WEINBERG & REIS CO., L.P.A.**

By:   /S/ Jennie Adragna_____
Jennie Adragna, Legal Assistant